MARTEN C. BUTLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Butler v. Commissioner
Docket No. 20398-87
United States Tax Court
T.C. Memo 1990-194; 1990 Tax Ct. Memo LEXIS 213; 59 T.C.M. (CCH) 418; T.C.M. (RIA) 90194; April 16, 1990
Marten C. Butler, pro se. William T. Derick and Diane L. Berkowitz, for the respondent. RUWE
MEMORANDUM *214 FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1976
$ 11,225.31
$  5,612.31
--
1977
14,102.27
7,051.14
$ 139.09
1978
13,803.66
6,901.83
136.15
1979
41,086.56
20,543.28
747.44
The primary issue for decision is whether petitioner's income-producing activities for the years in issue were carried on as an agent of the Libertarian Church of the Golden Rule. If the answer to this question is no, we must also decide the following issues: (1) Did petitioner receive gross farm income during the taxable years 1976, 1977, 1978, and 1979, in the amounts of $ 50,267.79, $ 78,550.24, $ 60,760.00, and $ 74,816.91, respectively? (2) Is petitioner entitled to deduct business expenses in excess of the amounts allowed by respondent *215 for the taxable years 1976, 1977, 1978, and 1979? (3) Did petitioner realize capital gain from the sale of gold coins during taxable years 1977 and 1979? (4) Is petitioner liable for self-employment taxes on the adjusted earnings from his farm during the taxable years 1977, 1978, and 1979? (5) Is petitioner liable for the section 6654 additions to tax for failure to pay estimated tax for taxable years 1977, 1978, and 1979? (6) Is petitioner liable for the section 6653(b) additions to tax for fraud for taxable years 1976, 1977, 1978, and 1979? FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the second supplemental stipulation of facts, along with the attached exhibits, are incorporated herein by this reference. At the time of the filing of the petition in this case, petitioner resided in Leland, Illinois. Except for a two-year period during which he served in the armed forces, petitioner has been a farmer his entire working life. Petitioner resided on and farmed a piece of property owned by his father, Rufus E. Butler. To compensate his father for the use of the land, petitioner *216 provided his father with one-third of the proceeds from the sale of grain harvested on the farm. During at least some of the years in issue, petitioner also farmed two additional parcels of land, paying rent to the owners on a per-acre basis. In addition to growing crops, petitioner also stored grain that had been harvested by other farmers. In exchange for storing this grain, petitioner received rental income. Although he occasionally hired extra help, petitioner handled most of the day-to-day operations of the farm by himself. In addition to being a self-employed farmer, petitioner was employed as a guard at the Sheridan Correctional Center from 1968 until July 1978. The Sheridan Correctional Center is a penal institution operated by the state of Illinois. During the years 1976, 1977, and 1978, petitioner received wages of $ 13,118.95, $ 13,642.76, and $ 10,632.82 for the services he rendered as a prison guard. This wage income was reported to petitioner on Forms W-2 for each of the years that he was employed at the prison. Petitioner received interest income in the taxable years 1976, 1977, and 1978 in the amounts of $ 268.12, $ 44.91, and $ 279.59, respectively. During *217 the years in issue, petitioner owned gold coins, some of which he pledged as security on notes entered into with the Farmers State Bank of Somonauk. Petitioner sold gold coins during 1977 and 1979, receiving $ 2,989.80 and $ 37,031.12, respectively. For taxable years 1966 through 1975, petitioner filed joint Federal income tax returns with his wife, Margie S. Butler. Petitioner reported wage and farming income on these Federal income tax returns and was aware that this income was taxable. Petitioner was also aware of his obligation to timely file Federal income tax returns. During this time period, petitioner maintained complete and accurate records of his income and expenses and he prepared many of his own Federal income tax returns. At some point prior to the years in issue, however, petitioner began using the services of Donald J. Fisher, an accountant, to prepare his returns. On November 22, 1975, petitioner paid a fee to attend a "Tax Strike Convention" in Denver, Colorado. At the "Tax Strike Convention," petitioner obtained information on how to form a church. A few days later he discussed the idea of forming his own church with family members at a Thanksgiving Day *218 gathering. After discussing the matter, he decided to go ahead with the idea of forming a church. Petitioner admits that the avoidance of income taxes was a factor in the decision to form the alleged church. On December 17, 1975, petitioner paid $ 250 to the "Church of the Golden Rule" for a package of materials containing information on how to form a church. Using a portion of these materials, petitioner drafted a document entitled "Constitution of Libertarian Church of the Golden Rule." This document provides, among other things: (1) That the nomination and election of trustees will be made from the membership of the church; (2) that no part of the assets or earnings of the church will inure to the benefit of individual members; (3) that annual business meetings will be held and that minutes of such meetings will be kept; (4) that reports will be made at the annual meetings on the business and affairs of the church; and (5) that accounts of pledges and contributions made to the church will be maintained and that such accounts will be subjected to audits. Petitioner maintained that he was a minister of the Libertarian Church of the Golden Rule during the years at issue. The *219 alleged church has never applied for a ruling from the Internal Revenue Service with respect to its exemption status under section 501(c)(3). The alleged church did not maintain any records of its activities during the years in issue. Petitioner's lifestyle did not appreciably change following the formation of the alleged church. In Butler v. Commissioner, T.C. Memo. 1985-308, this Court sustained respondent's determination of a deficiency in petitioner's and Margie S. Butler's 1975 Federal income tax liability. We also held petitioner liable for fraud under section 6653(b). As a basis for our decision upholding the deficiency determination, we found that the Libertarian Church of the Golden Rule was not an entity exempt from taxation under section 501(c)(3). Accordingly, we held that petitioner's alleged contributions to the church did not qualify as charitable deductions. In sustaining the addition to tax for fraud, we noted: (1) Petitioner's awareness of his duty to file income tax returns; (2) that petitioner formed the church to avoid taxes, not for religious purposes; (3) that petitioner refused to cooperate with respondent's agents during the investigation *220 of his 1975 tax liability; and (4) that petitioner caused false documents to be filed with his employer claiming that he had incurred no income tax liability for 1975, and that he was not subject to withholding in 1976. On or before January 30, 1976, petitioner prepared a letter on stationery containing the church's letterhead addressed to the personnel office at the Sheridan Correctional Center. The letter states that petitioner, as a member of the Libertarian Church of the Golden Rule, has through a vow of poverty made an irrevocable gift of all his worldly possessions and income to the church. The letter also states that petitioner is required by the church to maintain his position as a prison guard and pursuant to the vow of poverty must donate all of his income to the church. The letter goes on to state that petitioner is exempt from all Federal and state taxes and requests the Sheridan Correctional Center to cease withholding all Federal income and social security taxes from petitioner's wages. The letter is signed by petitioner's brother-in-law, John E. Barrett. The letter, however, was prepared by petitioner. On April 10, 1976, petitioner filed an amended 1973 Federal *221 income tax return (Form 1040X). The Form 1040X is signed by petitioner and his wife and states that the changes are due to the conversion of "Federal Reserve Notes to the value of constitutionally defined dollars." Attached to the Form 1040X is a 1973 Form 1040, signed by petitioner and his wife, requesting a refund of $ 4,460.00 in "Federal Res. Notes." Filed along with these two tax forms were numerous documents containing references to the United States Constitution and the bible. The amended 1973 Federal tax return and the 1973 Form 1040 were both prepared by Arthur J. Porth, a previously convicted tax offender. [2] Petitioner never met Arthur Porth in person and at the time that he filed the amended tax return was not aware that Mr. Porth had been previously convicted on tax charges. Petitioner did not consult with his accountant, Donald J. Fisher, before filing the amended return. On September 2, 1976, petitioner submitted a Form W-4E to his employer, the Sheridan Correctional Center. On that form, petitioner certified under penalties of perjury that he incurred no liability for Federal *222 income tax for 1975 and that he anticipated that he would not incur liabilities for Federal income tax during 1976. In actuality, petitioner incurred a Federal income tax liability in the amount of $ 1,327.53 for taxable year 1975. Petitioner had $ 317.00 withheld from his wages during taxable year 1976. Petitioner did not have Federal income tax withheld from his wages during taxable years 1977, 1978, and 1979. In July 1978, petitioner filed a Form 1040 with respondent relating to taxable year 1976. Petitioner indicated his filing status as "married filing separately," reported no items of income or deduction, and requested a refund of $ 317.00 in Federal income taxes. Through the submission of this document, petitioner also sought a refund of $ 221.40 in FICA taxes. Attached to the signed Form 1040 was a copy of a vow of poverty, signed by petitioner, dated December 30, 1975. The Form 1040 was prepared by Donald J. Fisher, petitioner's accountant. On October 9, 1978, respondent refunded the $ 317.00 to petitioner, along with an additional $ 30.15 in interest. On April 13, 1979, petitioner filed a Form 843 with respondent seeking for a second time a refund of the $ 221.40 *223 in FICA taxes withheld from his salary during 1976. On the claim form, petitioner explained that as an agent of the Libertarian Church of the Golden Rule he is not liable for the payment of FICA taxes. The record is silent as to whether this amount was ever paid to petitioner. During the years in issue, the Libertarian Church of the Golden Rule maintained in its name a commercial checking account (#005-452) at Farmers State Bank of Somonauk. Petitioner and his wife had signature authority over the account. During the years in issue, petitioner used this checking account to pay personal expenses. The church also maintained a savings account (#015966) at Leland National Bank during the years 1976 and 1977. Petitioner, his wife, and his daughter had signature authority over this account. Petitioner used funds deposited in this account to pay personal expenses. In addition to the above accounts, a second checking account (#000-214-3) was maintained at Leland National Bank in the name of the church. Petitioner, his wife, and his daughter had signature authority over this account. As with the other accounts, petitioner used funds deposited to this account to pay personal expenses. *224 Petitioner and Margie S. Butler also maintained a separate checking account (#2-753-7) at Leland National Bank during the years 1976, 1977, and 1978. During his investigation of petitioner, respondent attempted to obtain information from third parties by issuing summonses to those third parties. Petitioner attempted to stay compliance with all of the summonses and respondent eventually petitioned the United States District Court for the Southern District of Iowa to enforce the summonses. The district court ruled that the summonses were to be complied with and the documents were subsequently turned over to respondent. These documents included bank records, records from various grain companies, and records from petitioner's accountant, Donald J. Fisher. Prior to the years in issue, petitioner reported his income from farming activities using the accrual method of accounting. Respondent, in computing petitioner's farm income, used the accrual method of accounting for the years in issue. Respondent reconstructed petitioner's income for the years in issue by analyzing the information and documents he secured from third parties. Petitioner received proceeds from grain sales for *225 each of the taxable years 1976 through 1979, in the amounts of $ 34,266.76, $ 54,022.63, $ 79,503.36, and $ 35,169.91, respectively. These amounts do not include any portion of the grain sale proceeds that were paid directly to petitioner's father as his one-third share. Petitioner's "other farm income" for each of the taxable years 1976 through 1979, inclusive, was $ 595.26, $ 2,777.00, $ 3,788.00, and $ 5,380.39, [3] respectively. Petitioner's beginning grain inventory for taxable year 1976 was $ 29,199.27. [4] Petitioner's ending grain inventory for taxable years 1976 through 1979, inclusive, was $ 44,605.04, $ 66,355.65, $ 43,824.28, and $ 78,090.89, respectively. In order to reconstruct petitioner's farm expenses for the years in issue, respondent obtained copies of petitioner's bank statements and cancelled checks. Respondent also contacted payees of petitioner's cancelled checks in an effort *226 to more accurately ascertain petitioner's farm expenses. Using this information, respondent calculated petitioner's farm expenses for the years 1976 through 1979, as $ 23,764.40, $ 49,913.62, $ 24,345.71, and $ 21,507.49, respectively. Petitioner did not file Federal income tax returns for the taxable years 1977, 1978, and 1979. His wife, however, did file separate returns for taxable years 1976 through 1979. Petitioner's 1976 income tax return was not filed in a timely manner. During the years in issue, petitioner failed to maintain books and records of his income-producing activities. ULTIMATE FINDINGS OF FACT The income, expenses, and deductions at issue in this case are attributable to petitioner, not the Libertarian Church of the Golden Rule. Petitioner did not file Federal income tax returns for taxable years 1977, 1978, and 1979. Petitioner did not file his 1976 Federal income tax return in a timely manner. Petitioner failed to report gross farm income during the taxable years 1976, 1977, 1978, and 1979, in the amounts of $ 50,267.79, $ 78,550.24, $ 60,760.00, and $ 74,816.91, respectively. Petitioner has failed to establish that he is entitled to business *227 expenses in excess of the amounts allowed by respondent in the notice of deficiency. Petitioner failed to report wages received from his employment as a prison guard. Petitioner failed to report gain from the sale of gold coins in the amount of $ 2,989.80 and $ 37,031.12 during the taxable years 1977 and 1979, respectively. Petitioner failed to report interest income earned during taxable years 1976, 1977, and 1978. During the years in issue, petitioner was a self-employed farmer. Petitioner is liable for the self-employment tax on net earnings from self-employment for the taxable years 1977, 1978, and 1979. Petitioner did not make estimated income tax payments for taxable years 1976, 1977, 1978, and 1979. All or part of the underpayments of tax required to be shown on petitioner's income tax returns for all of the taxable years in issue are due to fraud. OPINION Petitioner's primary argument is that amounts paid to him during the years in issue were paid to him as an agent of his church and, therefore, should not be included in his taxable income. Income received by a person as an agent for a principal is the income of the principal, not the agent. Maryland Casualty Co. v. United States, 251 U.S. 342, 345-348 (1920). *228 Where, however, there is no agent-principal relationship, it is a basic rule of tax law that an assignment by a taxpayer of income to another person is ineffectual to relieve the taxpayer of Federal income tax liability on such income regardless of the motivation behind the assignment. United States v. Basye, 410 U.S. 441, 447 (1973); Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930). The determination of whether an agency relationship exists is to be resolved upon consideration of all the underlying facts. Stephenson v. Commissioner, 79 T.C. 995, 999-1001 (1982), affd. 748 F.2d 331 (6th Cir. 1984); McGahen v. Commissioner, 76 T.C. 468, 478-479 (1981), affd. without opinion 720 F.2d 664 (3d Cir. 1983); see also Schuster v. Commissioner, 800 F.2d 672, 677 (7th Cir. 1986), affg. 84 T.C. 764 (1985); Fogarty v. United States, 780 F.2d 1005, 1012-1013 (Fed. Cir. 1986). *229 There was no agent-principal relationship between petitioner and the Libertarian Church of the Golden Rule. Petitioner had unlimited authority and control over all funds and property purportedly transferred to the church. The manner in which petitioner handled his economic and financial affairs was the same as it was before he formed his church. Petitioner had unlimited access to all of the church's savings and checking accounts, and he used these accounts to pay his personal living expenses. Petitioner's lifestyle did not change after he formed the church. Petitioner made no attempt to account for any of the funds he spent during the years in issue. Petitioner formed his church to avoid paying taxes rather than for religious reasons. Petitioner's church did not constitute a separate and distinct principal, and he cannot shelter himself from taxation by claiming that he received the amounts in issue as an agent of the church. Stephenson v. Commissioner, 79 T.C. at 1000-1001; McGahen v. Commissioner, 76 T.C. at 478-479. We must next decide whether petitioner failed to report gross farm income for the taxable years 1976, 1977, 1978, and 1979, *230 in the amounts determined by respondent. Respondent's determinations are presumed correct and petitioner bears the burden of proof. Rule 142(a). Taxpayers are required to keep such books and records as are sufficient to accurately reflect income. Sec. 6001. Petitioner did not keep such books and records. In their absence, respondent may determine the existence and amount of unreported income through the use of any method that clearly reflects the taxpayer's income. Holland v. United States, 348 U.S. 121, 130-132 (1954); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970). Respondent, in reconstructing petitioner's gross farm income, employed the specific item method of income reconstruction. This Court has upheld this method of income reconstruction. Estate of Beck v. Commissioner, 56 T.C. 297, 361 (1971). Respondent reconstructed total grain sales for the years in question by aggregating all amounts paid to petitioner by local grain elevator companies. The *231 amount and purpose of each cancelled check was verified by tracing the check to the accounting records of the grain elevator companies. The parties have stipulated to the grain sales figures and "other farm income" figures set forth in the notice of deficiency. Respondent computed ending grain inventory figures by calculating petitioner's grain on hand at the close of each taxable year based on records obtained from grain elevator companies. Respondent calculated the fair market value of petitioner's grain on hand using market prices supplied by the grain elevator companies. Using this information, respondent calculated gross farm income for all the years in issue. The undisputed facts support the gross farm income attributed to petitioner. Petitioner did not challenge respondent's method of computing gross farm income during the trial of this case, and he has not raised the issue on brief. We find that petitioner's farming activity generated gross farm income in the amounts of $ 50,267.79, $ 78,550.24, $ 60,760.00, and $ 74,816.91 during taxable years 1976, 1977, 1978, and 1979, respectively. Respondent also reconstructed the expenses associated with petitioner's farming *232 activity. Respondent issued summonses to financial institutions in order to obtain records related to any accounts maintained by petitioner or the Libertarian Church of the Golden Rule. Respondent then analyzed petitioner's cancelled checks to identify any payments that could reasonably be considered farm expenses. Respondent also contacted the check payees to determine if petitioner incurred any additional expenses during the years in issue that were not represented by the cancelled checks. In his notice of deficiency, respondent computed total farm expenses based on the amounts reported on the cancelled checks and on any additional information he obtained from the aforementioned check payees. Petitioner challenged respondent's failure to include as farming expenses cancelled checks in the amounts of $ 2,000 and $ 6,000. The $ 2,000 check was dated March 30, 1978, and was made payable to Rufus and Lillian Butler, petitioner's parents. The $ 6,000 check was dated July 3, 1978, and was made payable to Rufus Butler. Respondent's agent, Georgia Brown, testified that she did not include these two checks in her calculation of farm expenses because she did not know the purposes for *233 which the checks had been written. Based on the even dollar amounts and the fact that the checks were written to petitioner's parents, Ms. Brown testified that she could not determine if the checks represented a loan, the repayment of a loan, a gift, or a farm expense. Therefore, Ms. Brown did not include these amounts in her calculation of farm expenses. Aside from questioning Ms. Brown as to whether the two checks could possibly represent rental payments for use of the farm, petitioner offered no evidence as to why he wrote the two checks. Accordingly, petitioner has failed to establish that he incurred business expenses in his farming activity in excess of the amounts allowed by respondent in the notice of deficiency. At trial, petitioner also appeared to argue that two checks, totalling $ 10,500, represented farm expenses that should have been included in respondent's computations. One check for $ 10,000 was made payable to Ray E. Friedman & Co. The check for $ 500 was made payable to the Nat'l Invest. Pub. On brief, petitioner argues for the first time that these funds were invested in a commodity brokerage account. Petitioner argues on brief that, after paying $ 800 *234 to meet a margin call, he liquidated the account incurring a loss of $ 11,374 on his investment. According to petitioner, this loss should be applied to offset any profits he earned from the sale of gold coins. It is well settled that issues not raised by the pleadings or at trial, but argued for the first time on brief should not be considered. Aero Rental v. Commissioner, 64 T.C. 331, 338 (1975); Greenberg v. Commissioner, 25 T.C. 534, 537 (1955). Although petitioner did make reference to the two checks during trial, he did not raise this specific issue at trial. We therefore decline to address this issue. [5]
We must also decide whether petitioner failed to report capital gains derived from the sale of gold coins during taxable years 1977 and 1979. Petitioner acknowledges that he sold gold coins to *235 Numisco, Inc. and received $ 2,989.80 in 1977 and $ 37,031.12 in 1979. Petitioner argues, however, that respondent should have reduced the amount of gain by his basis in the coins. Petitioner introduced into evidence three invoices from a Phoenix, Arizona coin broker. These invoices indicate that petitioner purchased a variety of gold coins during 1974. Petitioner owned an unknown quantity of gold coins during the year in issue and pledged coins as collateral for loans. Inasmuch as the record is silent as to whether the coins purchased in 1974 are the same coins sold in 1977 and 1979, petitioner has failed to establish a basis for the coins sold in 1977 and 1979. Accordingly, we sustain respondent's determination as set forth in the notice of deficiency. [6]
We must also determine whether petitioner is liable for self-employment taxes on the adjusted earnings from his farm during the taxable years 1977, 1978, and 1979 and whether petitioner is liable for the section 6654 additions to tax for failure to pay estimated tax for taxable years 1977, 1978, and 1979. Petitioner *236 bears the burden of proof as to both of these issues. Rule 142(a). Petitioner introduced no evidence to refute respondent's determinations. Accordingly, we sustain respondent on both of these issues. The final issue for decision is whether petitioner is liable for the section 6653(b) additions to tax for fraud for taxable years 1976, 1977, 1978, and 1979. Respondent has the burden of proving, by clear and convincing evidence, that some part of an underpayment of tax was due to fraud. Doncaster v. Commissioner, 77 T.C. 334, 336 (1981); sec. 7454(a); Rule 142(b). To meet this burden, respondent must establish that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). When fraud is determined for more than one taxable year, respondent must *237 show that some part of an underpayment was due to fraud for each taxable year for the corresponding addition to tax to be upheld. Castillo v. Commissioner, 84 T.C. 405, 409 (1985). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud must never be presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Respondent may, however, prove fraud through circumstantial evidence since direct evidence of the taxpayer's intent is rarely available. Edelson v. Commissioner, 829 F.2d 828, 832 (9th Cir. 1987), affg. a Memorandum Opinion of this Court; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. a Memorandum Opinion of this Court; Rowlee v. Commissioner, supra at 1123. *238 The evidence clearly establishes that petitioner's underpayment of income taxes during each of the years in issue was due to fraud. Petitioner failed to maintain books and records of his income-producing activities during the years in issue. In light of the fact that for many years prior to the years in issue petitioner was aware of the obligation to maintain adequate records, we find this conduct to constitute evidence of fraud. Bradford v. Commissioner, supra at 307; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Petitioner has used several methods and theories to avoid paying his income taxes. In December, 1975, petitioner formed a church after attending a "Tax Strike Convention" in Colorado. Petitioner has admitted that the avoidance of income taxes was a factor in the decision to form the alleged church. Petitioner did not timely file his 1975 return. In July 1978, petitioner filed a delinquent 1975 return in which he falsely claimed a large deduction for an alleged charitable contribution to his church. See Butler v. Commissioner, T.C. Memo. 1985-308. On April 10, 1976, petitioner filed an amended Federal *239 tax return for 1973 containing frivolous tax protestor arguments which were unrelated to his alleged church activities. On September 7, 1976, petitioner knowingly submitted a false Form W-4E to his employer claiming under penalty of perjury that he was exempt from withholding. In July, 1978, petitioner filed a Form 1040 relating to taxable year 1976. Petitioner reported no items of income or deduction, claimed a refund, and attached a vow of poverty to the return. These specific acts evidence an ongoing intent on petitioner's behalf to conceal or otherwise prevent the collection of taxes known to be owing. Petitioner did not file any Federal income tax returns for the years 1977, 1978, or 1979. While failure to file is not, in and of itself, conclusive evidence of fraud, such failure may properly be considered in connection with other facts in determining whether an underpayment of tax is due to fraud. Holland v. United States, 348 U.S. at 139; Castillo v. Commissioner, supra at 409; Brooks v. Commissioner, 82 T.C. 413, 431 (1984), *240 affd. without published opinion 772 F.2d 910 (9th Cir. 1985); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Grosshandler v. Commissioner, supra at 19. Petitioner was well aware of his obligation to file returns, to report all of his income thereon, and to pay tax on such income. Petitioner's failure to file returns during the years in issue, when viewed in light of his previous filing of Federal income tax returns for the taxable years 1965 through 1974, provides evidence of fraud. Castillo v. Commissioner, supra.
Petitioner's only justification for not filing was his assertion that all of the income he received was received on behalf of his church and that he was merely an agent. Petitioner first used the church as part of a scheme to evade taxes in 1975. Petitioner's failure to report income for the years in issue was a continuation of this scheme. [7]
*241 Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See United States v. Porth, 426 F.2d 519↩ (10th Cir. 1970).
3. The stipulation of facts erroneously indicates that petitioner's "other farm income" for taxable year 1979 was $ 5,370.39. An examination of the record clearly reveals this error and the correct amount. ↩
4. The stipulation of facts erroneously indicates taxable year 1977.↩
5. In any event, petitioner has failed to introduce evidence tending to establish that the claimed losses occurred. We note that petitioner's alleged investment in a commodity brokerage account is inconsistent with his alleged vow of poverty.↩
6. Petitioner's ownership of gold coins is clearly inconsistent with his purported vow of poverty.↩
7. In Butler v. Commissioner, T.C. Memo. 1985-308↩, we found that the Libertarian Church of the Golden Rule was part of petitioner's tax evasion scheme and held that petitioner's alleged contributions to the church did not qualify as charitable deductions. In this case, petitioner claims that all amounts paid to him during the years in issue were paid to him as an agent of the church, and, therefore, should not be included in his taxable income. This variation in petitioner's legal theory makes no difference to our conclusion that the use of the Libertarian Church of the Golden Rule was part of petitioner's continuing tax evasion scheme during the years in issue.